# EXHIBIT E

**Ari S. Casper**
Managing Partner
acasper@casperfirm.com
www.casperfirm.com



400 E. Pratt Street, Suite 903
Baltimore, MD 21202
410.989.5097

1310 L Street, NW, Suite 800
Washington, DC 20005
202.759.9515

May 26, 2026

Honorable Judge Matthew J. Maddox
United States District Court
101 W. Lombard Street
Baltimore, Maryland 21201

Re:     *United States vs Jacob Rappaport*: MJM-26-96

Dear Judge Maddox:

I have known Yaakov Rappaport for more than a decade. During that time, I have worked with him on numerous community initiatives and have had the opportunity to observe firsthand both his character and his generosity. Yaakov has consistently devoted his time, resources, and energy to helping others, often quietly and without seeking recognition. In all of my interactions with him, I have known him to be an honorable, compassionate, and deeply community-oriented person of strong moral character.

I was genuinely shocked when I learned of this case. The conduct at issue is entirely inconsistent with the person I have known for many years.

As a former Assistant United States Attorney in this District, I understand well the purposes of sentencing, including deterrence, accountability, and protection of the public. I can say with complete confidence that Yaakov poses no risk of reoffending and that this experience alone has had a profound impact on him. He is deeply remorseful and devastated by the consequences of this case, both for himself and, more importantly, for his family.

In my view, this is precisely the type of case in which leniency serves both justice and the broader interests of society. Yaakov has already suffered substantial personal, professional, financial, and reputational consequences. A sentence focused on mercy and rehabilitation, rather than additional punishment, will allow him to continue supporting his family and contributing meaningfully to the community he has long served.

I respectfully ask the Court to consider the entirety of Yaakov's life, character, and contributions in imposing sentence.

Very truly yours,

Ari S. Casper

# AFRAH LAW

3701 Old Court Road, Suite 21A, Baltimore, MD 21208

ariel@afrahlaw.com | 443-418-4266

Date: May 15, 2026

Honorable Judge Matthew J. Maddox
United States District Court
101 W. Lombard Street
Baltimore, Maryland 21201

Re:    United States vs Jacob Rappaport; MJM-26-96

Dear Judge Maddox:

I know Jacob through my work as the founding attorney at Afrah Law LLC and as an attorney at Clear Title Group. Over the years, I have worked with him on dozens of occasions and have consistently found him to be thoughtful, professional, and highly respected by those around him.

Jacob has generously referred many clients to my firm, which has helped my business tremendously. His willingness to support others and help people without expecting anything in return speaks strongly to his character and integrity. Through our many discussions regarding legal matters, I have also learned a great deal from him and have always appreciated his insight and judgment.

In addition to our legal and professional interactions, I have also worked with Jacob at various call centers supporting non-profit organizations throughout Baltimore City and Baltimore County. Through those experiences, I witnessed firsthand his dedication to charitable causes and his sincere commitment to helping others. He consistently treated people with patience, respect, and compassion, and he was always willing to go out of his way to support both coworkers and the organizations we worked with.

In my experience, Jacob is someone who genuinely cares about helping others and maintaining strong relationships within his community and professional circles. He carries himself with the utmost kindness and professionalism, and I hold him in very high regard.

Sincerely,

Ariel Afrah, Esq.
Afrah Law LLC

40 W. Chesapeake Ave., Ste. 414

Towson, Maryland 21204

E-mail: david@davidresnicklaw.com

# DAVID A. RESNICK
*Advocate and Attorney at Law*

Office: 410-358-9727

Mobile: 443-846-4734

Fax: 1-425-675-1563

May 11, 2026

The Honorable Matthew J. Maddox
US District Court – Maryland
101 W. Lombard St.
Baltimore, MD 21297-1302

RE: US v. Jacob Rappaport, MJM-26-96

Dear Judge Maddox:

It is with a heavy heart that I write this letter in support of Mr. Rappaport because I know that the incident that is the subject of this matter does not represent who he really is, but is an anomaly in a life of service to G-d, his family, his community and his profession.

Jacob comes from a well-known and highly regarded family in the Baltimore Jewish community. The family, including Jacob, is personally and intimately known to me for a long time. Both of his parents are teachers, leaders and functionaries in the community, and have been for decades. Jacob is also an active and valued participant in the community in many endeavors through his synagogue and schools.

Although Jacob acknowledged the wrongdoing by pleading guilty, based on our many years of association, I am certain that he did not intend either to hurt any individual. Although misguided and wrong, I am convinced that his actions were intended to vigorously promote the interests of his client, and not to hurt anyone else. Obviously, that was a mistake, and I know that Jacob is filled with remorse for his skewered vision of the entire transaction that led him to do what he did.

As Jacob acknowledges, there is, of course, no excuse for what he did. I hope that his acceptance of responsibility for that and the depth of the lesson that he learned from the experience, as well as his long history of unblemished service to the profession, his firm and his family and community will allow the Court to be fair and judicious in sentencing.

Jacob is visibly and overtly a member of the Orthodox Jewish community. An additional punishment for Jacob is his knowledge that his actions reflect on the Orthodox Jewish community as a whole. That is a heavy burden to bear and undoubtedly weighs heavily on him now.

Thank you for any consideration you can show to him and his family in sentencing. I am sure that this behavior will never be repeated. I wish you many years on the bench in good health. Thank you for your assistance.

Very truly yours,

DAVID A. RESNICK

DAR/dlEnclosure

Mayer E. Guttman, Esquire
6302 Wirt Avenue
Baltimore, Maryland 21215


June 4, 2026

Honorable Judge Matthew J. Maddox
United States District Court
101 W. Lombard Street
Baltimore, Maryland 21201

Re: United States vs. Jacob Rappaport; MJM-26-96

Dear Judge Maddox:

I was requested to write a character reference for Mr. Yaakov Rappaport, who worked with me at the law firm of LevinGann PA for fourteen years. I appreciate the opportunity to provide such a letter.

I am not excusing his lapse of judgment on the current matter before the Court. It is not a matter for possible justification. However, it was an aberration of the normal conduct Yaakov exhibited over his tenure with the Firm.

Mr. Rappaport started at Levin Gann PA in 2012 and became a partner in 2019. He brought diligence and attention to client concerns that was unequalled. He became proficient in real estate matters and applied the law to his clients' benefit. He was supportive of others in the Firm, a sounding board for ideas and concepts. He was legally astute and an innovative thinker.

I saw him as a family man, always available when his wife or young children called during the day. Someone to emulate in that regard. Family members were often at the office and he always had time for them. His religious background was apparent and he was dedicated to attending prayer services. His work schedule was planned around his family and religious obligations rather than the other way around.

In short, he is a friend and colleague I admire and respect and am disheartened he stumbled as he did. He has acknowledged his mistakes and has acted in assisting the Firm and clients in wrapping up matters properly, so others were affected as little as possible.

Thank you for your consideration.

Sincerely,

Mayer E. Guttman

Date: May 7, 2026

Honorable Judge Matthew J. Maddox
United States District Court
101 W. Lombard Street
Baltimore, Maryland 21201

Re:     United States vs Jacob Rappaport; MJM-26-96

Dear Judge Maddox:

I have known Jacob professionally since I moved back to Baltimore in 2008. While we have worked across the table on a number of commercial transactions, I want to focus on his pro-bono work and service.

Over the last few months, as he dealt with the turmoil in his life relating to his own legal issues, he took on a pro-bono representation opposite me, to help negotiate an exit package for his client. As expected, he was able to balance the needs of client with the needs of the organization, such that at the end of the negotiations, both parties were able to express sincere appreciation for his efforts. If not for the trust that both parties had in his integrity, I do not know if that transaction would have gone as well as it did.

I have no doubt that as soon as he is able, Jacob will continue to advocate for those in need and use his professional skills for the betterment of all. I would hope this would factor into Your Honor's considerations.

Sincerely,

Meir Neuberger

# MITCHELL A. SILK
### 1370 53ᵀᴴ STREET ◆ BROOKLYN, NY 11219
### +1 347 525 8545
### MASILK@ICLOUD.COM

May 18, 2026

United States District Court
District of Maryland
101 West Lombard Street
Baltimore, MD 21201

Attention: The Honorable Matthew J. Maddox

**Re:    United States of America v. Jacob Rappaport**
**        Criminal No. 26-96**

Dear Judge Maddox:

I write in connection with the sentencing of Jacob (Yaakov) Rappaport in the captioned matter that I understand is before this Honorable Court.

By way of background, I am a past Presidentially-nominated, Senate-confirmed Assistant Secretary for International Markets of the U.S. Department of the Treasury, and served in that role until 2021. Prior to that position, I served as Deputy Assistant Secretary for Investment, Energy and Infrastructure at Treasury from October 2017. Before entering public service, I worked in Big Law for over three decades. My last position was as a senior partner of the global law firm Allen & Overy LLP, where I practiced for over 20 years in New York and Hong Kong, leading the firm's Asia Projects Group, co-leading its Americas Projects Group and founding its US-China Group. I have published numerous books on various fields of law, including with Oxford University Press. Since leaving Treasury I have published a best-selling book on my career and policy work as seen through the lens of my life and faith, and the first complete English translation of the most widely studied Chassidic commentary on the Bible, the *Kedushas Levi* (3 volumes and 1,968 pages). I am writing this letter in my private capacity, and the views set out below are personal to me and do not represent the position of any present or past employer. I mention this background solely to provide the Court with a basis to assess the weight it may wish to accord my observations of Yaakov's character set out below.

A note on form: I refer to Mr. Rappaport throughout this letter as Yaakov. I intend no informality toward this Honorable Court. He is more than 30 years my junior, the son of one of my closest friends, and a young man I have known since before his birth. Yaakov is the only name by which I have ever known him or spoken of him.

I write in the hope that this Court will weigh, alongside the gravity of the offense to which Yaakov has pled guilty, the full measure of the man I have observed across more than four decades since his birth.

1

Before I describe the man I know, I wish to state plainly that I do not write to minimize the seriousness of the offense to which Yaakov has pled guilty. Conspiracy to commit bank fraud is a grave matter, and Yaakov has acknowledged his responsibility for it by his plea. I do not seek to excuse what he has admitted, and I would not presume to comment on the appropriate Guidelines calculation or the legal analysis properly before counsel and the Court. I write only to offer the Court evidence of character, drawn from a half-century of close acquaintance with Yaakov and his family, which I respectfully submit is relevant to the Court's consideration of the history and characteristics of the defendant and the other factors set out in 18 U.S.C. § 3553(a).

My connection to the Rappaport family spans nearly fifty years. Yaakov descends from respected rabbinic lineage on both sides of his family. His father is one of my closest friends in the world. We were learning partners in rabbinic studies during my law school years; he has been a trusted rabbinic advisor to me through every significant moment of my adult life; he travelled from his home to Israel for my wedding, where he served, effectively, as my best man. I have known Yaakov quite literally since he was *in utero*. I visited his father's home virtually every weekday morning for our learning sessions, and frequently slept at their house on the Jewish Sabbath, where I was a guest, as a young law student, for meals. I attended his ritual circumcision on his eighth day of life. I have watched him grow, year by year, from a small child into the man who now stands before this Court. I have come to know and appreciate Yaakov as a filial son, a warm sibling, an exemplary student, a young rabbinic scholar in his own right, a devoted husband and father, and an accomplished lawyer. During his law school years and the early years of his legal career, I had the privilege of serving as one of his mentors, and we corresponded frequently about the practice of law, the responsibilities it imposes, and the ethical obligations that attend it.

Across the full arc of those decades, I have observed Yaakov's quiet, almost understated diligence, an unusual capacity for loyalty to family and community and a moral seriousness that is, in my experience, rare in a man of his age. As a young man, he distinguished himself in rabbinic study by sincere, disciplined and committed immersion in his Talmudic studies. In the various Yeshivas (Rabbinic colleges) he attended (Bais Medrash and Mesivta of Baltimore, Passaic Yeshiva and Mir Yeshiva in Jerusalem), he sat with discipline and "*shteygt*," the Yiddish verb we use when a disciple wrestles down, tears apart and reconstructs a Talmudic proposition accompanied by numerous, and many times seemingly irreconcilable, authoritative commentaries in true Hermaneutic fashion.

As a law student and young lawyer, he showed the same disposition. He was thorough, careful, deferential to those with more experience, attentive to the human consequences of legal work. I observed him take on matters that other young lawyers would have declined for being too small, too thankless, or too complicated, because someone he respected had asked him to help. He never turned away a clergy member confronted with a property tax assessment appeal, or a Rabbi who needed to incorporate a not-for-profit or religious corporate entity, or the tedium of applying for a prosecuting 501(c)(3) tax exempt status. He did this work pro bono, and no such matter was too hard or too tedious for Yaakov.

Yaakov is the father of five children, with a sixth child on the way. He married young, as is customary in our community. From the beginning of his married life, he has put family at the center of his world, in the same manner he observed in his own home growing up. His wife,

Bracha, has carried the household with extraordinary grace, but Yaakov's role in his children's daily lives is neither ceremonial nor occasional. He is the parent who learns Torah and reviews homework with his sons ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ In addition, though these are, I suspect, the questions on which his counsel is most carefully scrutinized, ██████████████████████████████████████████████ He is present at the dinner table. He knows the names of his children's teachers and their friends. He trained Yeruchem himself for his bar mitzvah, down to the preparation of Yeruchem's *pshetl*, the Talmudic discourse a bar mitzvah boy traditionally delivers, and looks forward to doing the same for young Meir. Yaakov presides over every Sabbath and Festival meal in his home, reciting Kiddush, drawing his family into the singing of *zemiros*, speaking words of Torah and leading *bentching* (recitation of grace after meals), with his wife and children at his side. The prospect of his absence from that household, particularly with a new child arriving, is a matter I raise not to displace the Court's discretion but because it is, in honesty, the first thing that comes to mind when I think of these proceedings. Six children will feel the consequences of whatever sentence the Court deems appropriate and imposes.

Outside his home, Yaakov is an active member of Baltimore's Orthodox Jewish community. He regularly provides pro bono legal counsel to Bikur Cholim of Baltimore, a volunteer organization that supported over 3,500 community members facing illness last year, from physician referrals to lodging for families keeping bedside vigil. Most recently, Yaakov reviewed the lease for the organization's new premises. He has handled estate administration, pro bono, for bereaved families in the community after the loss of a parent or spouse. He is a tireless fundraiser for communal causes, particularly for Ahavas Yisroel of Baltimore, Bais Yaakov of Baltimore, and leading Rabbinic Colleges (Mir Yeshiva, Ner Yisroel and Passaic Yeshiva). I mention these things not as an offset to the offense, but because they are part of who Yaakov is, and the Court is entitled to the full picture of the person it is sentencing.

I have spoken with Yaakov at length since these proceedings began. Yaakov has completely owned the wrong in this matter. He is not in denial. He is not looking for someone else to blame. He understands what he did and why it was wrong. Moreover, he is, after considerable soul searching, prepared to accept the judgment that may be meted on him, come what may, and make whatever amends are within his power and to live the rest of his life in a manner that justifies the trust his family, his community, and, if the Court so permits, his profession may yet place in him. His guilty plea is, to my mind, in line with the man I have always known him to be. He has never been one to evade a difficult truth.

I am mindful that the sentence in this matter is committed entirely to the discretion of this Court, and that the Court must weigh considerations, including the need for deterrence, the seriousness of the offense, the integrity of the financial system, that are not within my competence to address. I respectfully ask only that, in conducting the individualized assessment the Sentencing Reform Act contemplates, the Court give weight to the man I have described: a forty-two-year-old first-time offender; a father of soon-to-be six young children; a husband whose wife and children depend upon him daily; a lawyer who has accepted responsibility at the earliest opportunity; and

a member of a community in which he has, on balance and over many years, done far more good no harm.  If a sentence consistent with the Court's obligations can be fashioned that permits Yaakov to remain in his home and continue to provide for his family, whether through probation, home confinement, community service, or some combination the Court deems appropriate, I respectfully submit that such a sentence will serve the ends of justice far better than a custodial term, and will allow Yaakov to spend the coming years repairing what he has damaged and raising the children who need him.

I would be pleased to answer any questions that this Honorable Court may have about anything I have said in this letter.  The contents of this letter are true to the best of my knowledge and recollection.

Respectfully yours,

Mitchell A. Silk

May 14, 2026

Honorable Judge Matthew J. Maddox
United States District Court
101 W. Lombard Street
Baltimore, Maryland 21201

Re:   United States vs Jacob Rappaport; MJM-26-96

Dear Judge Maddox:

I write this letter in support of Jacob Rappaport, whom I have known personally and professionally for almost two decades. I am aware that Jacob has acknowledged his guilt for the offense for which he was accused and I do not seek to excuse that conduct. I do, however, hope to provide the Court with insight into his character beyond this offense.

I have worked with Jacob on a number of professional (legal) and community matters and have firsthand knowledge of the diligence and care with which he approaches sensitive and delicate issues. I have always known him to treat colleagues, clients and those seeking his advice and guidance with respect, humor and passion. Beyond his career, Jacob is a devoted husband and father and an integral member of the community. He is charitable, kind and is always there for a friend in need. Jacob has consistently shown genuine concern for others and has contributed positively to those around him.

I remain confident that this offense is an aberration and not reflective of his true character.

I respectfully ask the Court to consider these qualities, along with his swift acceptance of responsibility, when determining a fair and just sentence.

Thank you for your time and consideration.

Respectfully submitted,

Shlomo Kanner